## · State *vs.* Frederick E. Warner.

The statute (Gen. Statutes, tit. 12, § 123,) makes it a crime "to disturb or break the peace, or stir up and provoke contention and strife, by following or mocking any person with scurrilous or abusive or indecent language or gestures or noise." Where there had been a controversy between the accused and another person in which the accused had become greatly excited, and the next day, under the same excitement, he assailed the other party with scurrilous and abusive language, it was held that, whether it was a "following," within the meaning of the statute, or not, yet it was clearly a "mocking."

The person assailed was led by the provocation to use passionate words in reply. Held that this was a stirring up of contention and strife within the meaning of the statute.

Grandjuror's complaint for a breach of the peace, under the statute (Gen. Statutes, tit. 12, § 123,) which provides a punishment for "every person who shall disturb or break the peace, or stir up or provoke contention and strife, by following or mocking any person with scurrilous or abusive or indecent language or gestures or noise;" appealed by the defendant from the judgment of a justice of the peace and tried in the superior court, upon the plea of not guilty, before *Butler, J.*

The second count of the complaint, which was the only one relied on by the state, charged the offense in the words of the statute and as committed upon one Hosea R. Kerley. On the trial the attorney for the state offered evidence to prove, and claimed to have proved, that on the 29th of May, 1866, Kerley, who was at the time in the employ of the contractor for repairing the highways in the town of Plymouth, and who was about sixty years of age, was sitting by the side of the highway, with a fellow workman, eating his dinner, and that the defendant came from his house, which was a short distance off, and without any immediate provocation or precedent conversation, commenced and continued for some time to insult and abuse him by bleating like a sheep, calling him "a damned old sheep thief," "a damned knave," "a God-

damned old scoundrel," "a damned old rascal," and "an old gray-headed curse," and charged him with having sold a broken-backed steer for a sound one, and a sick hog that died, to a poor laboring man, and asking him if it was not true that he stole a ram, saying that folks said he did, and that he would rise right up if he was bleated at. To this Kerley made no response until towards the last, when his patience becoming exhausted and he excited, he told the defendant he was a good for nothing, mischievous liar.

· The defendant thereupon offered evidence to prove that on the day previous Kerley, with one Slater, his fellow workman, entered upon a part of the highway fronting the premises of the defendant, and between a barway immemorially used to enter a lot and the traveled path of the highway, and ploughed up a space of about four rods in length and twelve feet in breadth in the middle, which had never been disturbed, and was a pleasant grass plat, and had been immemorially used by the defendant's ancestors as a convenient standing place for carts and wagons, and carried away the earth to a considerable depth, leaving a hollow place; and that this was done unnecessarily, wantonly and maliciously, to revenge upon the defendant for complaining of the highway to the authorities during the previous season; and that while Kerley was so ploughing and removing the turf and soil on the preceding day, he remonstrated with him and begged him to desist, but he refused, and that he then became much enraged at what he deemed an unnecessary and wanton and malicious injury, and so continued until after the speaking of the alleged words. And he further offered evidence to prove that the ploughing and digging were unnecessary, that the dirt was carried a considerable distance upon the highway, and that sufficient material could have been obtained readily much nearer.

˙ The attorney for the state, in reply, offered evidence to prove that the ploughing and removal of the earth complained of were directed by the contractor for the repairing of the highways of the town; that they were done because the material there accumulated was needed upon the highway in the vicin-

ity, and for a considerable distance, and because such needed material could not be elsewhere conveniently and reasonably obtained, and were done in a proper and not injurious manner, and denied that the same were unnecessary, wanton, malicious or injurious. Upon the evidence so offered the attorney for the state claimed a conviction under the statute.

The counsel for the defendant claimed, and requested the court to charge the jury, that if they found the facts as he claimed to have shown them to be, there could be no conviction; because, first, the jury could only convict under the second count for what occurred on the second day, and that they could not convict for that, because there was no "following up" within the meaning of the statute, nor any "mocking;" and second, because in order to a conviction under the statute, the jury must find such "following" and "mocking" as did *in fact* stir up contention and strife, something more than mere provoked anger, and consequent angry and abusive words.

The court did not so charge the jury, but after remarking that the statute seemed to contemplate a breach of the peace by such words and conduct as tend to make others break it, as well as such as in fact stirred up strife, instructed them that if they found the language and conduct of the defendant, on the 29th day of May, to have been such as the attorney for the state claimed to have proved that they were, they would be justified in finding the defendant guilty on the second count of the complaint, even though they should find the transactions and occurrences of the previous day to have been what the defendant claimed them to have been.

The jury having rendered a verdict of guilty, the defendant moved for a new trial for error in the charge.

*Graves,* in support of the motion.

*Sedgwick,* State's Attorney, and *Giddings,* contra.

McCurdy, J. It having been found that in the exercise of

a malicious ingenuity one person could insult another, injure his character, wound his feelings, and provoke him to violence, in a mode against which there existed no precise and adequate provision of law, the legislature in 1865 enacted as follows, viz.: "Every person who shall disturb or break the peace, or stir up or provoke contention and strife by following or mocking any person with scurrilous or abusive or indecent language, or gestures, or noise," &c., "shall pay a fine," &c., "or suffer imprisonment," &c.

It cannot be denied, and is not denied on the part of the accused, that his language was sufficiently scurrilous, abusive and indecent, and calculated to stir up and provoke contention and strife, and so far to disturb the peace ; but he insists that it does not appear that there was any such following up or mocking as the statute contemplates, or that contention and strife were in fact stirred up by his conduct.

1. As to the following up. It seems that on the 28th of May a controversy had arisen between the parties, and that the accused had become very much enraged against Kerley and so continued until the next day, when he went to the place where Kerley was, and abused and insulted him in the manner recited in the information. It would not be a strained interpretation to call this conduct a following up. But however that may be, the outrageous acts of the accused clearly amount to a mocking within the purview of the statute. To mock, according to the lexicographers, is to deride, to laugh at, to ridicule, to treat with scorn and contempt. The language of the children to the prophet is an illustration, (2 Kings, 2, 23). The statute also defines its own meaning in the use of the term. It says, "mocking with scurrilous or abusive or indecent language or gestures or noise."

2. With respect to the other point, that strife and contention were not actually stirred up or provoked. To provoke is to excite, to stimulate, to arouse. Strife and contention do not necessarily imply blows. They may be evidenced by passionate words, looks and gestures. In this case the provocation

did so stimulate, excite and arouse the bad passions of Kerley that he replied with like violent and opprobious language.

A new trial is not advised.

In this opinion the other judges concurred, except BUTLER, J., who having tried the case in the court below, did not sit.

* * *

# SUPREME COURT OF ERRORS.

## COUNTIES OF HARTFORD AND TOLLAND.

SEPTEMBER TERM, 1867.

Present,

HINMAN, C. J., BUTLER, McCURDY, PARK AND CARPENTER, JS.