HOLMES v. STATE.

Opinion delivered July 8, 1918.

CRIMINAL LAW—BREACH OF PEACE—USE OF PROFANE AND ABUSIVE LAN-
GUAGE TO ANOTHER.—Defendants *held* not guilty of the crime de-
nounced in Kirby's Digest, section 1648, which prohibits the use
of any profane, violent, abusive or insulting language toward
another person, which is calculated in its common acceptation to
arouse anger in the person addressed, where under the evidence
the defendants continually applied to one H., a street vendor of
potatoes, the title of "Taters."

Appeal from Craighead Circuit Court, Jonesboro
District; *R. E. L. Johnson,* Special Judge; reversed.

*J. F. Gautney,* for appellants.

1.    There is no evidence to connect Louis Holmes
with the offense charged.

2.    The court erred in its instructions and the evi-
dence is not sufficient to warrant a conviction.    The lan-
guage was neither profane, vulgar nor abusive, nor was it
insulting or calculated to produce anger.    99 Ark. 142;
9 C. J. 388; 15 Porto Rico, 198.

*John D. Arbuckle,* Attorney General, and *T. W
Campbell,* Assistant, for appellee.

1.    Admit that as to Louis Holmes the evidence is
not sufficient.

2.    There is no error in the instructions.    33 Ark.
140.    The language used was insulting and abusive and
calculated to arouse anger.

McCULLOCH, C. J.    Appellants, Clifford and Louis
Holmes, are lads 13 or 14 years of age, and were arrested
and convicted before a justice of the peace of Craighead
County for violation of the statute which provides that if
any person "shall make use of any profane, violent,
abusive or insulting language toward or about another
person, in his presence or hearing, which language in its
common acceptation is calculated to arouse to anger the
person about whom or to whom it is spoken or addressed,
or to cause a breach of the peace or an assault, every such

person shall be deemed guilty of a breach of the peace,''
etc. Kirby's Digest, sec. 1648.

The case was tried in the circuit court on appeal and
the trial resulted in the conviction of appellants. It ap-
pears from the evidence that Fred Hatch, the prosecut-
ing witness, was a street vendor of potatoes at the town
of Bay, Craighead County, and in crying his wares was
accustomed to announce the sale of potatoes by calling
out ''taters'' in a tone of voice which excited merriment
on the part of those who heard him, and the boys in the
neighborhood gave him the nickname of ''Taters,'' to
which Hatch took serious offense. This had been going
on for nearly two years according to the testimony, and
Hatch had frequently shown irritation at the use of the
nickname in connection with himself, and had indicated
to the boys that its use was offensive to him. The evi-
dence shows that the boys sometimes applied other
nicknames to him, among other things calling him ''Flash-
light'' and ''Sixshooter,'' and also ''Chicken'' and
''Pumpkin.'' The judgment of conviction is, however,
sought to be upheld upon the use of the nickname ''Ta-
ters,'' which seems to have been especially offensive to
Hatch.

It is contended that the evidence wholly fails to con-
nect one of the appellants, Louis Holmes, with the use
of the alleged offensive language towards Hatch, and the
Attorney General concedes that the evidence is insuffi-
cient to convict him.

There was sufficient evidence, however, to warrant
the conclusion that Clifford Holmes used the nickname
towards Hatch, together with other boys about his own
age, and that Hatch was very much offended at the con-
duct of the boys in frequently calling him by the nick-
name ''Taters.''

The court, among other instructions, gave one to
the jury submitting to them for determination the ques-
tion whether or not the language used was such as in
its common acceptation was calculated to arouse a per-
son to anger and cause a breach of the peace. Counsel

for appellant insist that the instruction should not have been given and that the evidence was not sufficient to warrant a conviction, in that the language used by the boys does not come within the statute. It will be observed that the statute defines the character of language constituting the offense as "profane, violent, abusive or insulting language * * * which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace," etc. The language used must be in its nature "profane, violent, abusive or insulting" and it must be of that character which "in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault." It is not sufficient that the language used gives offense to the person to whom or about whom it is addressed, but it must be that which in its ordinary acceptation is calculated to give offense and to arouse to anger.

In *State* v. *Moser*, 33 Ark. 140, the defendant was accused of directing toward another person the language "go to hell, God damn you," and in passing upon the question of the guilt of the defendant, this court said that the language used was certainly profane, but that it was a question for the jury to determine whether the words were used under such circumstances as was calculated to arouse to anger the person to whom the words were addressed. In the present case the word used towards Hatch was neither profane, violent, abusive nor insulting, and was not in its common acceptation calculated to arouse a person to anger. The fact that Hatch became offended at the application to him of the nickname does not make the language such as is insulting according to its common acceptation. The nickname was used by the boys in a spirit of fun, doubtless because they ascertained that it irritated Hatch. It did not carry the implication of unlawful conduct or moral turpitude on the part of the person toward whom it was used. It was undoubtedly offensive to him and he showed his irritation

repeatedly, but the statute was not intended to reach cases where persons by the use of harmless nicknames or in a spirit of fun make use of nicknames or expressions which, although they are not calculated in their common acceptation to arouse anger, do in fact give offense because of the peculiar sensibilities of the person to whom or about whom the words are used. It may be considered bad taste for men or boys to indulge in such practice, but the law was not intended to reach such cases. We know that even innocent amusement at the expense of others sometimes brings about a breach of the peace, but those are not the things which the law meant to reach by this statute. It is only the language of the kind referred to which is calculated in its ordinary acceptation to arouse to anger or cause a breach of the peace that the statute denounces.

Our conclusion is, therefore, that the testimony in the case, given its strongest force, does not establish an offense under the statute. The judgment of the circuit court is reversed and the charge against each of the defendants is dismissed.

SMITH, J., (dissenting). If the only effect of the opinion in this case was to relieve the three boys of the five dollar fine imposed by the judgment of the court below, I would be constrained to pass it by without recording my dissent. But such is not its effect. The law as here announced applies to "grown-ups" as well as to boys, and it requires no stretch of the imagination to forecast some of the results which may flow from this decision, if the doctrine here announced is applied to a real, sure-enough lawsuit. The statute quoted from in the majority opinion has long been known as the peace-and-tranquility statute, and possibly no law in the books has been more wholesome. One can easily conjecture the quarrels and feuds and murders which the existence of this law, and its enforcement, has prevented, and its wholesome provisions should not be impaired.

Here the testimony was to the effect that Hatch discovered appellants and some other fifteen-year-old boys

in the act of cutting the stay-ropes of the tent of a little show which was being exhibited in the village of Bay, and he reported their conduct to the constable, who caused the boys to desist. Hatch testified that thereafter these boys "picked" on him. The boys say he called them Bohemians, but this Hatch denied. That, if true, however, would not have excused their conduct, because, as this court said in the case of *Moore v. State,* 50 Ark. 27, "Violent words can not excuse like violent words."

Hatch testified that this conduct continued for nearly two years until it became intolerable, and that he went to the boys and told them he did not want to slap them and did not want to compel their parents to pay fines, but that he would have them arrested if they did not stop their practice. The boys continued to apply these various nicknames to him, and he caused their arrest, and they were convicted in both the justice of the peace court and in the circuit court on appeal.

Hatch testified that the boys would halloo at him at various times and places and would follow him to the post office and poke their heads in at the door and call him the various nicknames they had given him. A Mr. Davis testified that the conduct of the boys finally "got on to Mr. Hatch," and Hatch himself testified that the conduct of the boys became unendurable.

In the case of *Moore* v. *State, supra,* in a discussion of the kind of language against the use of which the penalty of the statute was denounced, this court said:

"Whether language was in its nature calculated to arouse to anger or to provoke a breach of the peace, must be left to the jury, depending as it does upon the manner of the speaker, the relations of the parties, and the circumstances under which it was spoken."

These questions were submitted to the jury and the jury was told that a conviction could not be had unless they found the language used was, in its common acceptation, calculated to arouse Hatch to anger or to cause a breach of the peace, and the verdict of the jury should be conclusive of that fact.

Webster's New International Dictionary defines the verb "insult" as follows: "To treat with insolence, indignity, or contempt, by word or action; to affront wantonly."

The noun is defined as: "Gross indignity offered to another, either by word or act; an act or speech of insolence or contempt; an affront."

And the adjective "insulting" is defined as: "Containing, or characterized by, insult or indignity; tending to insult or affront; as, *insulting* language, treatment, etc." And the words "insolent," "impertinent," "impudent," "abusive," and "offensive," are given as synonyms of the word "insulting."

In view of these definitions it occurs to me that it was at least a question for the jury to say whether the language used under the circumstances was insulting.

There is in the life of most men something of which they are ashamed and would like to forget. It may be only some folly or indiscretion; or a personal peculiarity; or a physical defect. One might be reminded of this thing and know that others were also reminded by the use of some simple word or phrase or nickname which, standing by itself, would be innocuous, but which was used to insult, and accomplished the effect of producing great mental distress.

I am of the opinion that a wiser, sounder policy would be to permit the jury to say in a particular case, in accordance with the rule announced in *Moore* v. *State, supra,* whether the language used, under the circumstances under which it was used, was calculated, in its common acceptation, to insult the person to whom it was so spoken; and I, therefore, dissent from the opinion of the majority in this case.