STATE OF CONNECTICUT *v*. RUSSELL CANTWELL ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

(1)

Argued May 2—decided June 25, 1939.

*Olin R. Moyle* of the New York bar, and *Otto H. LaMacchia*, with whom, on the brief, was *Margaret E. Connors*, for the appellants (defendants).

*Edwin S. Pickett*, prosecuting attorney, with whom was *Luke H. Stapelton*, for the appellee (the state).

HINMAN, J. The defendants were tried and convicted upon the third and fifth counts of an information, the third charging them with violation of § 6294 of the General Statutes as amended by § 860d of the 1937 Supplement, quoted in the footnote,[1] and the

---

[1] "No person shall solicit money, services, subscriptions or any valuable thing for any alleged religious, charitable or philanthropic cause, from other than a member of the organization for whose benefit such person is soliciting or within the county in which such person or organization is located unless such cause shall have been approved by the secretary of the public welfare council. Upon application of any person in behalf of such cause, the secretary shall determine whether such cause is a religious one or is a bona fide object of charity or philanthropy and conforms to reasonable standards of efficiency and integrity, and, if he shall so find, shall approve

fifth that they "did disturb the public tranquility by certain acts or conduct inciting to violence or tending to provoke or excite others . . . to break the peace." Assignments of error pertaining to correction of the finding having been abandoned, this appeal is to be determined upon the facts as found, without the resort to the evidence which is invited in brief and argument.

The defendants, a father (Newton) and his two minor sons, aged sixteen and eighteen years, are members of a religious organization known as Jehovah's Witnesses and possessed credentials attesting that they are ordained ministers to preach the gospel. Each was equipped with a bag containing books and pamphlets in several different languages, a portable phonograph, and a set of records each of which when played introduced and was a sales talk for one of the books. Their mode of operation was to go singly from house to house and ask permission to play one of the records. "They would then ask the prospects if they would buy the book, and if not they would accept any contribution they could make. If the prospect was in a position to do this a pamphlet was left on the condition it would be read." On April 26, 1938, they were working in this manner on Cassius Street, in New Haven, which is a thickly-settled neighborhood where about 90 per cent. of the residents are Roman Catholics. A phonograph record giving a sales talk on one of the books, entitled "Enemies," was played in court and was an attack on the Catholic religion. None of the persons solicited were members of Jehovah's Witnesses; the defendants had not secured the permit provided by

the same and issue to the authority in charge a certificate to that effect. Such certificate may be revoked at any time. Any person violating any provision of this section shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both."

§ 6294 of the General Statutes and the trial court concluded that they were guilty of violating it. They claim that none of their activities come within the scope of this statute but that they consisted only of the distribution of printed books, pamphlets and periodicals. The finding which we have quoted, while somewhat ambiguous, sufficiently shows that in addition to the sale of the books and the distribution of the pamphlets the defendants were also soliciting contributions or donations of money for an alleged religious cause, and thereby came within the purview of the statute. The claim that the evidence was not sufficient to bring them within the statute is not now open to consideration in view of the abandonment of attack upon the finding; in fact the quoted paragraph which we regard as decisive was not attacked by the assignments directed against the finding as made.

The further contention that this statute, as applied to the acts of the defendants, is invalid under §§ 3, 5 and 6 of Article First of the Connecticut Constitution and the due process clause of the Fourteenth Amendment of the Constitution of the United States, appears to be based upon a claim that the statute, as applied to the defendants and their acts, abridges or denies freedom of religious profession and worship and liberty of speech and of the press. As already indicated, and as is plain from its terms, § 6294 does not apply, and is not sought to be applied in this case, to the dissemination, either by sale or free distribution, of printed matter by the defendants. As the defendants recognize in their brief, the purpose of the statute is to protect the public against imposition in the matter of solicitations of funds purportedly for religious, charitable, or philanthropic causes. This is not, and is not claimed to be, objectionable on constitutional grounds. It is such solicitation which brings the de-

fendants within the statute, not their other and apparently predominant activities in the dissemination of literature. For this reason there is not, as claimed, the constitutional objection which was found as to the application to members of this same organization of ordinances involved in *Lovell* v. *City of Griffin*, 303 U. S. 444, 58 Sup. Ct. 666, and *Cincinnati* v. *Mosier*, 14 Ohio Opinions 134, the first of which prohibited the distribution of literature of any kind, whether delivered free or sold, without a permit from the city manager, and the second required a license for peddlers selling goods carried by hand. The conviction of violation of § 6294 is supported by the facts found and is not invalid on constitutional grounds.

The fifth count charges a breach of the peace by acts which are within the common-law definition of that offense. 11 C. J. S., p. 818; 2 Brill, Cyclopedia of Criminal Law, p. 1523; 8 Am. Jur., p. 834; 8 R. C. L., § 305, p. 284; 1 Bishop, Criminal Law (9th Ed.) § 539. Section 6194 of the General Statutes does not define the crime known as breach of the peace, but merely specifies certain ways of committing it. It may be committed in ways other than those so specified. From the time of its original enactment until the Revision of 1821 the primary purpose of the statute was to provide for the recovery of damages by a person injured by specified acts directed against him and which are within the scope of those constituting a breach of the peace. General Statutes, Compilation of 1808, p. 545; Revision of 1821, p. 162. The specification of such acts logically would be restricted to the types of wrongs which would inflict damage, without design to embrace all acts of breach of the peace. See *State* v. *Farrall*, 29 Conn. 72; *State* v. *Christie*, 97 Vt. 461, 123 Atl. 849, 34 A. L. R. 577.

The defendants' contention is that the facts are in-

sufficient to establish the offense which is charged. The finding includes the following pertinent facts: Jesse Cantwell stopped John Ganley and John Cafferty, both of whom are Catholics, and receiving permission played the phonograph record "Enemies" which attacked that religion and church. On hearing it Ganley felt like hitting Cantwell and told him to take his bag and victrola and be on his way. If he had remained he might have received physical violence. Cafferty's mental reaction was to put Jesse off the street and he warned him that he had better get off before something happened to him. Russell Cantwell called at the home of Anna Rigby and offered to sell a book known as "Riches." She, already knowing the book and considering it a strong attack against her religion, was angered and complained to the police and "was mad enough to hit him if he did not go away." None of the other witnesses claimed to have any knowledge of the contents of the books other than what they heard from the phonograph record. There was no evidence that the defendants became offensive or entered into any arguments upon refusal to purchase the books.

The charge here is not, as the defendants seem to infer, a "solicitation" to commit a crime, as in *State* v. *Avery,* 7 Conn. 266 (adultery), and *State* v. *Schleifer,* 99 Conn. 432, 121 Atl. 805 (murder, assault, etc.), and in *State* v. *Quinlan,* 86 N. J. L. 120, 91 Atl. 111, but provoking or exciting others to break the peace. It is not necessary, as claimed, to show that other persons were actually provoked to the point of violence or disturbance of the peace. Bishop, op. cit., § 539; *State* v. *Farrall,* supra; *State* v. *Warner,* 34 Conn. 276, 279; *Davis* v. *Burgess,* 54 Mich. 514, 517, 20 N. W. 540; *Delk* v. *Commonwealth,* 166 Ky. 39, 45, 178 S. W. 1129, L. R. A. 1916B, 1117. Nor is a specific intent to provoke a breach of the peace essential; it is sufficient if

the acts are such as tend to produce it. *State* v. *Shelby,* 95 Minn. 65, 103 N. W. 725. The doing of acts or the use of language which, under circumstances of which the person is or should be aware, are calculated or likely to provoke another person or other persons to acts of immediate violence may constitute a breach of the peace. *St. Louis* v. *Slupsky,* 254 Mo. 309, 318, 162 S. W. 155, 157, 49 L. R. A. (N. S.) 919; *Holmes* v. *State,* 135 Ark. 187, 189, 204 S. W. 846; *Faulkner* v. *State,* 166 Ga. 645, 665, 114 S. E. 193. The rule is as applicable where, instead of being directly spoken, the objectionable language is communicated, as here, by means of a victrola operated by the person accused, or by banner or placard as in *West* v. *Commonwealth,* 208 Ky. 735, 271 S. W. 1079. The effect or tendency of words or conduct depends largely upon the circumstances, and is a question of fact. *State* v. *Moser,* 33 Ark. 140. It is apparent from the facts found that the playing for audition by loyal Catholics of a record violently attacking their religion and church could well be found to constitute the offense charged, and they warrant finding the defendant Jesse Cantwell guilty. As was observed in *Delk* v. *Commonwealth,* supra, 47, while the right to propagate religious views is not to be denied, "one will not be permitted to commit a breach of the peace under the guise of preaching the gospel."

We are unable, however, to discover in the facts found sufficient justification for the conviction of the other two defendants upon this count. Aside from the one incident between Russell Cantwell and Anna Rigby, the most that the finding discloses, as to them in this connection, is a house to house canvassing which is inadequate to constitute the offense charged, as well as apparently subject to the constitutional considerations advanced in *Lovell* v. *City of Griffin,* and *Cin-*

*cinnati* v. *Mosier,* supra. As to the Rigby incident, the resentment entertained by her appears to have been engendered by prior acquaintance with the book of which, so far as the record shows, Cantwell was unaware, rather than anything offensive in the words or manner of his offer to sell it to her. The foregoing considerations also support, as to these two defendants, the assignments of error in the admission and retention in evidence of excerpts from the books and pamphlets, but this evidence is extraneous to the facts supporting the charge as against the defendant Jesse Cantwell and could not have been prejudicial to him.

There is no error as to the conviction of all of the defendants on the third count, or that of the defendant Jesse Cantwell on the fifth count; there is error as to the defendants Newton and Russell Cantwell on the fifth count and a new trial is ordered thereon, as to them.

In this opinion the other judges concurred except that MALTBIE, C. J., and BROWN, J., dissented from so much of it as holds that the finding was sufficient to support the conviction of the accused upon the third count under the statute penalizing the solicitation of money or other valuable thing.