. No. 73–544. LUCAS ET AL. *v.* ARKANSAS. Appeal from Sup. Ct. Ark. Judgment vacated and case remanded for further consideration in light of *Lewis* v. *City of New Orleans*, 415 U. S. 130 (1974). [For dissenting opinion of MR. JUSTICE DOUGLAS, see *infra*, p. 924.]

MR. JUSTICE BLACKMUN, with whom THE CHIEF JUSTICE and MR. JUSTICE REHNQUIST join, dissenting.

A North Little Rock policeman on routine patrol drove his car at midnight through a parking lot adjacent to a motel and restaurant. He heard loud language and thought a fight was in progress. He rolled the window down and heard one of the appellants say, "Well, there goes the big, bad mother fucking cops." He ignored this and slowly drove on. The language grew louder. He pulled over behind a large parking sign. An appellant said, "Look at the chicken shit mother fucker hide over there behind that sign." He drove back. An appellant then said, "Now the sorry son-of-a-bitch is going to come back over here." Appellants were arrested and convicted of breaching the peace, in violation of Arkansas law.[1] The Supreme Court of Arkansas affirmed the convictions. 254 Ark. 584, 494 S. W. 2d 705 (1973).

---

[1] Ark. Stat. Ann. § 41–1412 (1964) provides:

"If any person shall make use of any profane, violent, vulgar, abusive or insulting language toward or about any other person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault, [he] shall be deemed guilty of a breach of the peace . . . ."

The Court today vacates the state court judgment and remands for further consideration in light of *Lewis* v. *City of New Orleans*, 415 U. S. 130 (1974). I dissent.

The Arkansas Court has already clearly construed § 41–1412 to apply only to "fighting words," as defined in *Chaplinsky* v. *New Hampshire*, 315 U. S. 568, 572 (1942), in *Gooding* v. *Wilson*, 405 U. S. 518, 523–525 (1972), and in *Lewis, supra,* at 132. That court, in *Holmes* v. *State*, 135 Ark. 187, 204 S. W. 846 (1918), held that the statute was narrow in its scope. "It is not sufficient that the language used gives offense to the person to whom or about whom it is addressed, but it must be that which in its ordinary acceptation is calculated to give offense and to arouse to anger." 135 Ark., at 189, 204 S. W., at 847. In its opinion in this case, the Arkansas Court reaffirmed its prior interpretation of the statute:

> "As we construe § 41–1412 it is narrowed to 'fighting words' addressed to, toward, or about another person in his presence or hearing, which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault. We can conceive of no stronger 'fighting words' than those employed by the appellants in this case, and there is substantial evidence they were calculated to arouse to anger the officer to whom they were spoken or addressed. As a matter of fact the appellant, Fred Lucas, admits that if the mildest of the epithets employed by him, were directed to or about him, it would arouse him to anger." 254 Ark., at 589–590, 494 S. W. 2d, at 708.

I am at a loss to understand what this Court further requires in a narrowing interpretation under its version of the *Chaplinsky* standard espoused in *Gooding*.[2] Ap-

---

[2] The standard of responsibility is not left open as the Court said

parently, not only must every statute regulating speech in the 50 States parrot the wording the Court desires, but a state court must play the role of a ventriloquist's dummy mouthing ceremonial phrases in order to obtain the seal of this Court's approval. There can be no question whatsoever that the Arkansas Court, in this case and in its earlier opinion in *Holmes*, narrowed the statute within the confines of the Court's *Gooding* doctrine,[3] and there is therefore nothing more for that court

---

it was in *Gooding* and in *Ashton* v. *Kentucky*, 384 U. S. 195 (1966). The statute punishes language which *in its ordinary acceptation* is calculated to cause a breach of the peace. The statute on its face does not permit or require an inquiry into the respective boiling points of the particular individuals or groups involved in each case, but restricts the factfinder to language that would, in its common or ordinary acceptation, be calculated to cause a breach of the peace.

In *Chaplinsky*, the Court accepted a limiting construction which held that the statute was "not to be defined in terms of what a particular addressee thinks. . . . The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight." 315 U. S., at 573. In its *Holmes* case, the Arkansas Supreme Court pronounced exactly the same standard: "It is not sufficient that the language used gives offense to the person to whom or about whom it is addressed, but it must be that which in its ordinary acceptation is calculated to give offense and to arouse to anger." 135 Ark., at 189, 204 S. W., at 847.

[3] My Brother DOUGLAS asserts that the principle enunciated in *Gooding* and *Lewis* is not "new." It hardly needs stating, however, that the speech at issue in *Cantwell* v. *Connecticut*, 310 U. S. 296 (1940), and in *Terminiello* v. *Chicago*, 337 U. S. 1 (1949), and the manner and place of delivery, are not at all similar to the speech at issue in *Chaplinsky, Gooding*, and *Lewis*.

*Cantwell* was a case where the State sought to punish Jehovah's Witnesses, who claimed to be ordained ministers, for a message which attacked the Catholic religion. This the State could not do. But we expressly noted that the case involved "no assault or threatening of bodily harm, no truculent bearing, no intentional discourtesy, no personal abuse." 310 U. S., at 310. In *Terminiello* the petitioner was arrested for an address made under the auspices of the Christian Veterans of America. Our concern there was the protection of

to do. I disagree with this roughshod treatment of the opinions of the Supreme Court of the State of Arkansas. I would affirm, and not vacate, the court's judgment.

---

ideas, manifestly a part of an informed and free public discourse, and essential to the preservation of responsive government and peaceful, orderly change. We expressly did *not* reach the question "whether the content of petitioner's speech was composed of derisive, fighting words which carried it outside the scope of the constitutional guarantees." 337 U. S., at 3.

Before we rush headlong into scrapping legislative enactments that on their face, or as applied, appear to interfere with some form of speech, we should pause long enough to inquire into "the nature of the speech in question, the possible effect the statute or ordinance has upon such speech, the importance of the speech in relation to the exposition of ideas, [and] the purported or asserted community interest in preventing that speech." *Lewis* v. *City of New Orleans,* 415 U. S. 130, 136–137 (1974) (dissenting opinion).