Fred Carroll LUCAS and Ronnie Ray
LUCAS *v.* STATE of Arkansas

CR 73-31 520 S.W. 2d 224

Opinion delivered March 3, 1975
[Rehearing denied April 7, 1975.]

*Fred A. Newth Jr.,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Charles A. Banks,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. We have reconsidered this case in the light of *Lewis* v. *City of New Orleans,* 415 U.S. 130 (1974), as directed by mandate of the United States Supreme Court in its one sentence decision of April 15, 1974. The dissenting opinion of Mr. Justice Blackmun, in which the Chief Justice and Mr. Justice Rehnquist joined, sets out the facts in more detail than we did in our original opinion, *Lucas* v. *State,* 254

Ark. 584, 494 S.W. 2d 705. The facts are not germane to the issue now before us and they will not be recited again here.

The statute under which the appellants were convicted, Ark. Stat. Ann. § 41-1412 (Repl. 1964), was Act 30 of the Arkansas Legislature for 1909. It was entitled "An Act to Better Protect the Public Peace," and it has served its purpose for more than 50 years without question as to its constitutionality until now.

We find no comparison between Ark. Stat. Ann. § 41-1412 (Repl. 1964) and the New Orleans Municipal Ordinance 828 M. C. S. § 49-7 struck down as unconstitutional in *Lewis v. City of New Orleans, supra*. The New Orleans Ordinance provided as follows:

> "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty."

Aside from the ambiguity in the word "opprobrious", as pointed out in *Lewis*, the New Orleans Ordinance would have made it unlawful and a breach of the peace to curse, revile or use obscene language *toward* or with *reference to* any member of the city police while in the actual performance of his duty regardless of when, where, or to whom the language was used or addressed. Furthermore, the New Orleans Ordinance provided a one sided violation. It was apparently designed to protect the police force against unguarded and overemphatically expressed criticism of its members in the performance of their duty regardless of when, or where, or to whom the language was addressed, and regardless of whether the language arose from incitement, anger or frustration. In other words, the New Orleans Ordinance protected members of the police force from the use of the described language toward, or with reference to them, but did not protect the public from the same language used by any member of the city police while in the performance of their duty even when addressed directly to a member of the public who might be involved. Such is not the wording, effect or intent of Ark. Stat.

Ann. § 41-1412 (Repl. 1964). Mr. Justice Powell concurring in the result reached in *Lewis* v. *City of New Orleans, supra,* clearly sets out the constitutional deficiencies in the New Orleans Ordinance, but we are of the opinion its deficiencies do not apply to Ark. Stat. Ann. § 41-1412 (Repl. 1964) as interpreted and applied by the courts of this state.

Under Ark. Stat. Ann. § 41-1412 (Repl. 1964) the language must be *profane, violent, vulgar* or *abusive* and must be directed toward or about any other person *in his presence or hearing.* Such language must *in its common acceptation be calculated to arouse to anger* the person about or to whom it is spoken or addressed, *or to cause a breach of the peace or assault.* When a police officer is involved, this statute applies to language used *by* a police officer, as well as to the language used *to* a police officer. It is a matter of common knowledge that many assaults, both simple and aggravated, and also many homicides, have their origin in profane, violent, vulgar, abusive or insulting language addressed to or about another person in his presence or hearing. It is also common knowledge that such language used by members of the police, when addressed to a member of the public, results in resisting arrest and more important, results in a loss of respect for law and order.

In our original opinion, *Lucas* v. *State, supra,* we attempted to distinguish Ark. Stat. Ann. § 41-1412 (Repl. 1964) from the Georgia statute, § 26-6303, struck down in *Gooding* v. *Wilson,* 405 U.S. 518 (1972). We are still of the opinion that "opprobrious words or abusive language tending to cause a breach of the peace," as was used in the Georgia statute, is much broader than the "profane, violent, vulgar, abusive or insulting language . . . which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault," as used in the Arkansas statute, § 41-1412, *supra.* Unlike the standard fixed by the jury in applying the Georgia statute as was exemplified in the case of *Fish* v. *State,* 52 S. E. 737, where the Georgia Supreme Court held that a jury question was presented under the statute by the language: "You swore a lie," as pointed out in *Gooding, supra,* this court (Arkansas Supreme Court) narrow-

ed the language of the Arkansas statute as early as 1918 in the case of *Holmes* v. *State*, 135 Ark. 187, 204 S.W. 846. In *Holmes* the prosecuting witness, Hatch, was very much offended at the conduct of some boys in the community frequently calling him by the nickname "Taters" and other similar nicknames. In that case the trial court, among other instructions, gave one to the jury submitting to them for determination the question of whether or not the language used was such as in its common acceptation was calculated to arouse a person to anger and cause a breach of the peace. In reversing the judgment of the trial court and dismissing the charges, this court said:

> "Counsel for appellant insist that the instruction should not have been given and that the evidence was not sufficient to warrant a conviction, in that the language used by the boys does not come within the statute. It will be observed that the statute defines the character of language constituting the offense as 'profane, violent, abusive or insulting language * * * which language in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace,' etc. The language used must be in its nature 'profane, violent, abusive or insulting' and it must be of that character which 'in its common acceptation is calculated to arouse to anger the person about or to whom it is spoken or addressed, or to cause a breach of the peace or an assault.' It is not sufficient that the language used gives offense to the person to whom or about whom it is addressed, but is must be that which in its ordinary acceptation is calculated to give offense and to arouse to anger.
>
> In *State* v. *Moser*, 33 Ark. 140, the defendant was accused of directing toward another person the language 'go to hell, God damn you,' and in passing upon the question of the guilt of the defendant, this court said that the language used was certainly profane, but that it was a question for the jury to determine whether the words were used under such circumstances as was calculated to arouse to anger the person to whom the words were addressed. In the present case the word used towards

Hatch was neither profane, violent, abusive nor insulting, and was not in its common acceptation calculated to arouse a person to anger. The fact that Hatch became offended at the application to him of the nickname does not make the language such as is insulting according to its common acceptation. * * * It did not carry the implication of unlawful conduct or moral turpitude on the part of the person toward whom it was used. It was undoubtedly offensive to him and he showed his irritation repeatedly, but the statute was not intended to reach cases where persons by the use of harmless nicknames or in a spirit of fun make use of nicknames or expressions which, although they are not calculated in their common acceptation to arouse anger, do in fact give offense because of the peculiar sensibilities of the person to whom or about whom the words are used. It may be considered bad taste for men or boys to indulge in such practice, but the law was not intended to reach such cases. We know that even innocent amusement at the expense of others sometimes brings about a breach of the peace, but those are not the things which the law meant to reach by this statute. It is only the language of the kind referred to which is calculated in its ordinary acceptation to arouse to anger or cause a breach of the peace that the statute denounces.

Our conclusion is, therefore, that the testimony in the case, given its strongest force, does not establish an offense under the statute. The judgment of the circuit court is reversed and the charge against each of the defendants is dismissed."

Thus is is seen, and we so hold, as was indicated in *Smith v. Moser, supra,* that before a person may be properly charged with an offense under the statute, the profane, violent, vulgar or abusive language alleged to have been employed must be such as in its common acceptation is calculated to arouse to anger, etc. and the only question for determination by the jury is whether the accused employed such language, and whether it was calculated to arouse to anger, etc. Surely no one would suggest that in order to pass constitutional muster in sustaining the convictions in the case at bar, it would be

necessary for the statute to set out the exact language employed by the appellants in this case. We adhere to our former opinion that Ark. Stat. Ann. § 41-1412 (Repl. 1964) should be measured by the reasonable and common sense rules announced in *Chaplinsky* v. *New Hampshire*, 315 U.S. 568.

We conclude, therefore, that Ark. Stat. Ann. § 41-1412 (Repl. 1964) is constitutional in the light of *Lewis* v. *City of New Orleans, supra,* and that the judgment of the trial court in this case should be reaffirmed.

The judgment is affirmed.

GEORGE ROSE SMITH, BROWN and BYRD, JJ., dissent.

CONLEY BYRD, Justice, dissenting. As I read *Lewis* v. *City of New Orleans,* 415 U.S. 130, 94 S. Ct. 970, 39 L. ed. 2d 214 (1973), *Gooding* v. *Wilson,* 405 U.S. 518, 92 S. Ct. 1103, 31 L. ed. 2d 408 (1971) and *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 62 S. Ct. 766, 86 L. ed. 1031 (1942), they hold that a statute punishing spoken words is overly broad and invalid when it can be applied to utterances other than those which "inflict injury or tend to invite an immediate breach of the peace." Of course, our statute in addition to fighting words, as defined in *Lewis* v. *City of New Orleans, supra,* punishes the use of profane, violent, vulgar, abusive or insulting language which in its common acceptation is calculated to arouse to anger, *Holmes* v. *State,* 135 Ark. 187, 204 S.W. 846 (1918) and *State* v. *Moser,* 33 Ark. 140 (1878). As pointed out in *Cox* v. *Louisiana,* 379 U. S. 536, 85 S. Ct. 453, 13 L. ed. 471 (1965), speech that arouses or stirs people to anger is protected by the Constitution of the United States.

Consequently, it appears to me that the one sentence opinion by the majority of the United States Supreme Court gave us a sufficient guide to determine the constitutionality of our statute, Ark. Stat. Ann. § 41-1412 (Repl. 1964), when it referred us to *Lewis* v. *City of New Orleans, supra.*

For the reasons stated I would hold the statute invalid.

GEORGE ROSE SMITH and BROWN, JJ., join in this dissent.