Mattie HAMMOND, Appellant,

v.

The Honorable Richard B. ADKISSON, Pulaski County, Arkansas, Circuit Judge, and Monroe Love, Pulaski County, Arkansas, Sheriff, Appellees.

No. 75–1977.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1976.

Decided May 26, 1976.

Rehearing and Rehearing En Banc Denied June 17, 1976.

As Amended June 30, 1976.

John W. Walker, Walker, Kaplan & Mays, Little Rock, Ark., for appellant.

John Wesley Hall, Jr., Deputy Pros. Atty., Little Rock, Ark., for appellees.

Before LAY and WEBSTER, Circuit Judges, and URBOM,* Chief District Judge.

LAY, Circuit Judge.

Petitioner Mattie Hammond appeals from denial of a writ of habeas corpus by the federal district court. She was convicted under Ark.Stat.Ann. § 41–1412,[1] which prohibits:

> use of any profane, violent, vulgar, abusive or insulting language . . . calculated to arouse to anger the person . . . addressed, or to cause a breach of the peace or an assault.

---

* The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska, sitting by designation.

1. The Arkansas legislature repealed this section by Act 928 of 1975, § 3, after the passage of a new Arkansas Criminal Code. The amended act now provides in relevant part:

> Harassment.—A person commits the offense of harassment if, with purpose to harass, annoy, or alarm another person, he: . . . (b) in a public place, directs obscene language or makes an obscene gesture to or at another person in a manner likely to provoke a violent or disorderly response . . . (d) in a public place repeatedly insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response.

Ark.Stat.Ann. § 41–2909.

Petitioner challenges the constitutionality of the statute *as applied* to her.[2] She argues that the words she spoke were not "fighting words" in that they were not likely under the circumstances to provoke violent retaliation from the police officer to whom she spoke. The federal district court rejected this argument. We decline to hold that the words were not "fighting words" as a matter of law. However, we conditionally grant the writ because the state trial court made no finding that under the existing circumstances Ms. Hammond's words were likely to incite violent retaliation from the person to whom the words were addressed.

The facts may be briefly stated. In May of 1972, a Little Rock police officer went to the home of a 13 year-old, Milton Johnson, to investigate the theft of a bicycle. The officer showed his identification, but he did not have an arrest warrant. He placed Milton under arrest at that time. Milton's mother, Ruby Johnson, requested that she be allowed to accompany her son to the police station, and the arresting officer called another officer to aid in transportation. While waiting for the second officer to arrive, the arresting officer frisked the child.

At this time, 19 year-old Mattie Hammond, a relative [3] who lived with the Johnsons, came out of the house onto the porch and said to the officer:

> You m. f. son-of-a-bitches think you all can come out and do anything that you want to do.

At that point, the officer told her that she was under arrest. Ms. Hammond then said, "You m. f. pigs is not gonna carry me anywhere," and she ran into the house. The officer followed. A scuffle took place and petitioner was handcuffed and taken to the police station.

Upon trial in the circuit court, Ms. Hammond was found guilty of using abusive language and of resisting arrest. She was given a $50.00 fine plus costs on each count and sentenced to 30 days in jail. The jail sentences were suspended. On appeal, the convictions were affirmed by the Arkansas Supreme Court. *Hammond v. State,* 255 Ark. 56, 498 S.W.2d 652 (1973). When petitioner failed to pay her fine, a bench warrant was issued, but execution was stayed upon the filing of the petition for a writ of habeas corpus in federal court.

In affirming petitioner's conviction for use of abusive language, the Arkansas Supreme Court observed that § 41–1412 is limited to "that vile or abusive language which arouses anger *to the extent likely to cause retaliation*—fighting words . . .." 498 S.W.2d at 653 (emphasis added). However, the record demonstrates that the state trial judge made no attempt in this case to limit the application of the statute in such a manner.

At the time of petitioner's conviction in November 1972, the United States Supreme Court had not yet decided *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974),[4] and earlier decisions of

---

2. It appears that the facial validity of the challenged Arkansas statute, as now construed by the Arkansas court, is settled. The constitutionality of the statute was originally attacked in *Lucas v. Arkansas,* 254 Ark. 584, 494 S.W.2d 705 (1973). In that case, the Supreme Court of the United States granted *certiorari,* vacated and remanded the case for reconsideration in light of *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). *Lucas v. Arkansas,* 416 U.S. 919, 94 S.Ct. 1917, 40 L.Ed.2d 277 (1974). Upon remand, the conviction was again affirmed, and the subsequent appeal was dismissed by the Supreme Court for want of a substantial federal question. *Lucas v. Arkansas,* 520 S.W.2d 224 (Ark.), *appeal dismissed,* 423 U.S. 807, 96 S.Ct. 17, 46 L.Ed.2d 28 (1975).

3. The petitioner Mattie Hammond was the granddaughter of Ruby Johnson, the mother of Milton.

4. *Lewis* involved similar abusive language used by an individual resisting arrest who was convicted under a Louisiana ordinance. The Supreme Court of the United States remanded the case to the Louisiana court for construction of the ordinance, 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (1972). On remand, the state court again sustained the conviction, 263 La. 809, 269 So.2d 450 (1972), but the United States Supreme Court reversed and remanded it on the ground that the Louisiana Supreme Court's

the Arkansas Supreme Court had not given so narrow a reach to the statute under which Ms. Hammond was convicted. For example, in *Ruffin v. State,* 207 Ark. 672, 182 S.W.2d 673, 674 (1944), the Arkansas court said that the statute could be applied to words which are "in its common acceptation, calculated *to arouse to anger* the person addressed" (emphasis added). There, a verdict was sustained where an adult male propositioned an 18 year-old female: "I would take you out tonight and love you up, and I would give you ten dollars."

■ It is now clear that the words must do more than offend, cause indignation or anger the addressee to lose the protection of the First Amendment. *See Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). *See also Lucas v. State,* 520 S.W.2d 224, 227 (Ark.1975) (Byrd, J., dissenting). As the Supreme Court observed in *Cox v. Louisiana:*

> Yet, a "function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or *even stirs people to anger.* Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech . . . is . . . protected against censorship or punishment . . . . There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups." *Terminiello v. City of Chicago,* 337 U.S. 1, 4–5 [69 S.Ct. 894, 896, 93 L.Ed. 1131]. In *Terminiello* convictions were not allowed to stand because the trial judge charged that speech of the defendants could be

punished as a breach of the peace " 'if it stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm.' " *Id.,* 337 U.S., at 3 [69 S.Ct. 894, at 895, 93 L.Ed. 1131]. The Louisiana statute, as interpreted by the Louisiana court, is at least as likely to allow conviction for innocent speech as was the charge of the trial judge in *Terminiello.*

379 U.S. 536, 551–52, 85 S.Ct. 453, 462, 13 L.Ed.2d 471, 482 (1965) (emphasis added).

Thus, even insulting speech is protected by the First Amendment unless it is likely to arouse anger to the extent likely to cause violent physical retaliation.

In November 1972, when Ms. Hammond was tried, the trial judge stated on the record:

> . . . I find that this defendant did use the words m. f. directed towards the officer, Officer Ridge, and those, if those words directed towards a person are not abusive and profane, then there's no such thing, and I find the defendant guilty, fix her punishment at fifty dollars and cost in each case. Thirty days suspended.

■ The mere fact that such words are abusive and profane is clearly not sufficient to convict under the statute. The additional and essential prerequisite for a valid application of a breach of peace statute to speech is a determination that the words were used *"under such circumstances"* that they were likely to arouse to immediate and *violent* anger the person to whom the words were addressed. *See Lucas v. State (Lucas II),* 520 S.W.2d 224, 226 (Ark.1975) (emphasis added).

Although the words used may be judicially noted as profane and abusive, a trier of fact might nonetheless find they did not constitute "fighting words"—that is, words

construction had a broader sweep than the constitutional definition of fighting words announced in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). The Supreme Court made it clear that unless the spoken words fell within the scope of *Chaplinsky's* "fighting words," the statute was invalid. *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).

likely to incite the addressee to a violent reaction under the circumstances of the case. The importance of the circumstances in which abusive language is used is vividly illustrated by Mr. Justice Powell in his concurring opinion in *Lewis*:

> [W]ords may or may not be "fighting words," depending upon the circumstances of their utterance. It is unlikely . . . that the words said to have been used here would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered. . . . [A] properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to respond belligerently to "fighting words".

415 U.S. at 135, 94 S.Ct. at 973, 39 L.Ed.2d at 220.

We need not decide here whether a different standard applies as a matter of law when verbal abuse is directed at policemen rather than at others. We note only that in this case, the trier of fact might well conclude, notwithstanding the abusive and profane language, that there was no likelihood that a 19 year-old young woman's words would provoke a violent response from the particular officer involved.

In the present case, the trial judge apparently felt it was necessary to find only that abusive and profane language had been used. Since the Arkansas Supreme Court first narrowed the construction of the statute only *after* Ms. Hammond was tried, and considering as well the ambiguity of the trial court's findings, there is a grave danger that at the trial, protected speech was punished.[5] *Cf. Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Williams v. District of Columbia,* 136 U.S.App.D.C. 56, 419 F.2d 638 (1969).

We note that petitioner was also found guilty on a separate count of resisting arrest. Whether petitioner's conviction for resisting arrest can stand in view of the invalidity of her abusive language conviction is a matter of state law and does not present a federal question.

The order of the district court is reversed and remanded with directions that the State of Arkansas grant petitioner a new trial within 60 days of the issuance of the court's mandate. In the event no retrial is held, the federal district court shall grant a writ of habeas corpus discharging the petitioner.

Reversed and remanded.

---

5. The trial court's judgment merely recites that petitioner was "guilty of the offense of abusive language."