Jason KLEIN, Plaintiff,

v.

Kenneth SMITH, Defendant.

Civ. No. 86–0177 P.

United States District Court,
D. Maine.

June 5, 1986.

William C. Knowles, Verrill & Dana, Seth Berner, Portland, Me., for plaintiff.

Curtis Webber, Auburn, Me., for defendant.

GENE CARTER, District Judge.

Of all the griefs that harrass the distress'd,

Sure the most bitter is a scornful jest;

Fate never wounds more deep the gen'rous heart,

Than when a blockhead's insult points the dart.

    Samuel Johnson, *London* (1738)

MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFF'S COMPLAINT FOR A PERMANENT INJUNCTION

The matter before the Court is whether the Plaintiff, Jason Klein, who is a student at Oxford Hills High School, may be suspended from school for making a vulgar gesture to a teacher off school grounds and after school hours.

*Facts*

The parties have stipulated to the facts set forth by teacher Clyde Clark in his affidavit.[1] On April 14, 1986, Mr. Clark drove his son to Michel's Restaurant in South Paris, Maine so that his son could apply for a job there. He parked his car facing the side entrance of the restaurant and waited in the car while his son went inside. Another car pulled up to the side entrance and stopped perpendicular to the Clark car. Plaintiff Jason Klein was seat-

---

1. The stipulation also authorizes the incorporation into the evidentiary record of these proceedings of the pretrial deposition testimony of Mr. Clark and of Kenneth Smith, John Parsons, Walter Buotte and Kerry Kimball, subject to the objections stated on the record of said depositions by counsel. The affidavits of Messrs. Smith and Parsons are likewise incorporated into the evidentiary record.

ed in the passenger seat of the other car. Mr. Klein extended the middle finger of one hand toward Mr. Clark,[2] exited the car in which he was seated, and entered the restaurant.

As a result of this incident, Klein was suspended from school for ten days pursuant to a school rule that provides that students will be suspended for "vulgar or extremely inappropriate language or conduct directed to a staff member." In response, Klein filed a Complaint and Motion for a Temporary Restraining Order, seeking to enjoin the Defendant from suspending him until this Court had an opportunity to review the merits of Plaintiff's action. This Court granted Plaintiff's motion "to restore the *status quo* in this matter until the Court ... fully evaluate[s] the issues raised[.]" A full hearing and oral arguments have now been had, and the matter is before the Court on Plaintiff's claim for a permanent injunction against the disciplinary suspension.

The conduct in question occurred in a restaurant parking lot, far removed from any school premises or facilities at a time when teacher Clark was not associated in any way with his duties as a teacher. The student was not engaged in any school activity or associated in any way with school premises or his role as a student.[3] Any possible connection between his act of "giving the finger" to a person who happens to be one of his teachers and the proper and orderly operation of the school's activities is, on the record here made, far too attenuated to support discipline against Klein for violating the rule prohibiting vulgar or discourteous conduct toward a teacher.[4] The gesture does not constitute

2. Defendant has contended that the Plaintiff's gesture had no communicative purpose or expressive content and is, therefore, not "speech" entitled to First Amendment protection. The record conclusively establishes the contrary to be the case. The only purpose the Plaintiff could have had in making the gesture to Mr. Clark was to communicate or express in a very low manner his disrespect for Mr. Clark. The record displays that Mr. Clark so understood the gesture and that he was immediately offended by it. Defendant's counsel stated in argument that the gesture used is commonly understood to mean "fuck you." The Court concludes that Klein made the gesture for a communicative purpose, that of expressing in a dramatic manner to Mr. Clark his disrespect of him, and that it was so understood by Mr. Clark and others.

3. Defendant's counsel also argues that even if the gesture were speech, as the Court has found it to be, it is not "protected" speech because it constituted the equivalent of "fighting words." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Again, the record here made cuts strongly against the contention. Mr. Clark said that on seeing the gesture, he wanted to respond violently against Klein. But he did not, and he has since that time demonstrated effective restraint. Other teachers have testified to several similar incidents occurring since issuance of the Court's Temporary Restraining Order herein. The assistant principal, John Parsons, and the principal, Walter Buotte, have both testified to a large number of instances during their professional careers when students have given them "the finger." In none of these cases did violence follow. The Court can only conclude, contrary

to what might be its reflexive, uninformed judgment, that "the finger," at least when used against a universe of teachers, is not likely to provoke a violent response.

4. Mr. Clark and English teacher, Elizabeth A. Hayden, who is Chairman of the English and Foreign Language Departments at Oxford Hills, testified that the incident with Klein had sapped their resolve to enforce proper discipline upon him and other students *during school hours.* A letter solicited by Ms. Hayden, and signed by sixty of her colleagues in the school system, endorses these reservations. This testimony and evidence is taken by the Court to represent accurately the honest and thoroughly understandable concerns of the teachers in the school system. Surely, they would prefer to live without the specter of Klein's uncouth behavior recurring. It is deplorable that they should be required to fear such a recurrence, not just because they are teachers, but because they are decent human beings, living in a social environment that most people try to maintain on a more elevated level of social discourse. Under ideal circumstances, the effective response to out-of-school misbehavior would be the swift application of that parental discipline which is here roundly deserved.

It is argued that this weakening of the resolve of the teaching staff to enforce appropriate discipline in the school constitutes a sufficient adverse effect of Klein's conduct upon the proper operation of the school and upon the teacher-pupil relationships there existing to deprive the gesture of its protected status as expression under the rationale of *Tinker v. Des Moines Independent Community School District,* 393 U.S.

# 1442

"fighting words" which might justify stripping the communicative aspects of the gesture of a protected status under the First Amendment. *See supra* at 1441 and n. 3.

Anyone would wish that responsible teachers could go about their lives in society without being subjected to Klein-like abuse. But the question becomes ultimately what should we be prepared to pay in terms of restriction of our freedom to obtain that particular security. As this Court has observed in another, but similar, context:

> The public interest may be thought to be best served if schools and teachers practice the historical orthodoxies of our political freedom while they preach the temporally transitory orthodoxies of "taste." They may legitimately, and should, seek to inculcate the latter, but they may not, in the effort to do so, transgress upon the former. In the final analysis, under our Constitution individual liberty of expression must be accorded its day even at the expense of the promotion of aesthetic sophistication.

*Stanton v. Brunswick School Department,* 577 F.Supp. 1560, 1575 (D.Me.1984) (citation omitted). The First Amendment protection of freedom of expression may not be made a casualty of the effort to force-feed good manners to the ruffians among us.

■ Accordingly, the ten-day suspension imposed upon the Plaintiff as a disciplinary sanction for violating the rule cannot be sustained in the circumstances of this case in the face of his right of free speech under the First Amendment of the Constitution of the United States. *See Hammond v. Adkisson,* 536 F.2d 237, 239 (8th Cir.1976); *Cohen v. California,* 403 U.S. 15, 25–6, 91 S.Ct. 1780, 1788–89, 29 L.Ed.2d 284 (1971); *Tinker v. Des Moines Independent Com-*

*munity School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *State v. John W.,* 418 A.2d 1097 (Me.1980).

The prayer of the Plaintiff for a permanent injunction against the continuing imposition of that sanction is hereby *GRANTED* and the Permanent Injunction, annexed hereto as "Appendix A," shall issue forthwith.

So ORDERED.

## APPENDIX A

## PERMANENT INJUNCTION

Plaintiff's Complaint for a Permanent Injunction having come on for hearing on May 20, 1986, and oral argument on June 5, 1986, and the Court having this date separately made its findings of fact and conclusions of law in its Memorandum of Decision and Order Granting Plaintiff's Complaint for a Permanent Injunction of this date;

It is hereby *ORDERED* that Defendant Kenneth Smith, and all others acting in concert with him, forthwith permanently terminate the disciplinary administrative suspension at Oxford Hills High School of Plaintiff imposed because of the conduct of Plaintiff on April 14, 1986, at Michel's Restaurant in South Paris, Maine.

---

503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The Court cannot accept, however, this body of evidence as accurately predicting, however heartfelt it may presently be, the future course of the administration of discipline at Oxford Hills High. The Court cannot do these sixty-two mature and responsible professionals the disservice of believing that collectively their professional integrity, personal mental resolve, and individual character are going to dissolve, willy-nilly, in the face of the digital posturing of this splenetic, bad-mannered little boy. I know that the prophecy implied in their testimony will not be fulfilled. I think that they know that, too.