**Regina and Willard BIG EAGLE**

v.

**Leonard E. ANDERA et al.**

**Nos. Civ. 74–3003 and Civ. 74–3005.**

United States District Court,
South Dakota.

July 26, 1976.

Gary R. Thomas, Ft. Thompson, S. D., for plaintiffs.

David L. Bergren, Ft. Pierre, S. D., for defendants.

MEMORANDUM OPINION

BOGUE, District Judge.

### INTRODUCTION

Regina Big Eagle and Willard Big Eagle, both adult enrolled members of the Crow Creek Sioux Tribe, filed habeas corpus petitions in this Court pursuant to 25 U.S.C. § 1303 (1970). Both persons had been arrested on or about December 26, 1973, on the Crow Creek Reservation; both had been charged with "disorderly conduct," defined in Section 19 of the Penal Code of the Crow Creek Sioux Tribe; and "contributing to the delinquency of a minor," defined in Section 9 of the same code. Both petitioners had appeared in tribal court on December 29, 1973, and had pled guilty to both charges.

At a hearing on February 7, 1974, the habeas corpus petitions were joined because

of the similarity of the allegations and legal questions involved. Regina and Willard Big Eagle contended:

(1) that they had been denied assistance of counsel; and

(2) that Sections 9 and 19 of the Crow Creek Tribe's penal code were void because of vagueness and over-breadth.

After hearing testimony from the petitioners and the tribal judge, this Court rejected petitioners' contentions and denied the petitions by a memorandum decision filed April 1, 1974.

Petitioners appealed to the Eighth Circuit Court of Appeals. The issue concerning assistance of counsel was not raised, but petitioners did argue that both Section 9 and Section 19 of the tribal code were so vague and so overly broad that they should be declared void as violative of rights secured to individual Indians against tribal governments through 25 U.S.C. § 1302. The Eighth Circuit rejected the constitutional attack on Section 9, "contributing to the delinquency of a minor." As to Section 19 the Eighth Circuit Court of Appeals concluded:

> We agree with the argument of Regina and Willard that, if tested by standards applied to communities outside an Indian reservation, the Tribe's disorderly conduct statute appears facially vague and overbroad. [citations omitted] But we are not prepared to say that a limiting construction of the Statute, well-known to the Indian reservation society, would not, if made by the Tribal Court, cure its facial vagueness and overbreadth. · ·
> Lest we be misunderstood, we do not say that this statute can necessarily be saved by a restricted interpretation. Rather, we decline to rule on its validity without evidence of its enforcement and construction. *Big Eagle v. Andera*, 508 F.2d 1293 (8th Cir. 1975) at 1296–97.

Most of the testimony at the initial hearing in this Court had been directed toward the assistance of counsel contention; hence, the record failed to establish whether or not the ordinance (Section 19) had been sufficiently restricted by authoritative and consistent rulings of the tribal court in order to pass judicial scrutiny in light of the constitutional standards incorporated in 25 U.S.C. § 1302. Petitioners' and the tribe's briefs contained diametrically opposed contentions concerning prior construction of Section 19; and, of course, the Circuit Court had no way of ascertaining which brief more accurately reflected actual practice. Therefore, the case was remanded for further proceedings.

This Court held a hearing on March 26, 1976, to determine how the Crow Creek Tribal Court had construed the "disorderly conduct" statute; more particularly: (1) whether the tribal court had properly limited the statute; and (2) assuming the statute had been so limited, whether the limitation was understood by reservation society. Testimony was taken and numerous exhibits were introduced into evidence.

■ An inquiry into the understanding of reservation society in regard to the disorderly conduct ordinance presupposes a determination that the ordinance has in fact been limited properly; thus, the first issue presented can focus entirely upon prior construction of Section 19. Petitioners' objection to Section 19 is two-fold; they object that the section is vague and also that it suffers from overbreadth. Either objection, if founded in fact, is sufficient to render the ordinance unconstitutional; *i. e.* violative of 25 U.S.C. § 1302. Because the doctrine of overbreadth leads necessarily into First Amendment questions raised in this case, we prefer to deal first with the allegations of vagueness wherein the emphasis is upon the notice aspects of due process. Thus the issue we consider first is:

WHETHER OR NOT THE EVIDENCE ESTABLISHES THAT THE TRIBAL COURT HAS CONSISTENTLY LIMITED THE MEANING OF SECTION 19 OF THE CROW CREEK TRIBAL ORDINANCE SO THAT ITS MEANING IS CLEAR TO PERSONS OF ORDINARY INTELLIGENCE AND SO THAT POLICE, PROSECUTORS AND THE

COURT HAVE A COMPREHENSIBLE GUIDELINE FOR ENFORCEMENT?

We understand this to be first of all a fact-finding task. The Eighth Circuit has, as a matter of law, found the ordinance "facially vague." Unless that deficiency has been remedied by consistent and authoritative construction, Section 19 cannot pass a due process test, and, as a matter of law, this Court must conclude that it violates the Indian Bill of Rights.

■ After an investigation of the tribal court's practice in construing Section 19 with reference to the question of vagueness, we will proceed to determine whether or not past constructions have allowed this statute to infringe on protected freedoms. To some extent this inquiry will be anticipated in the fact-finding with reference to vagueness because vagueness and overbreadth are conceptually overlapping. For example, if vagueness allows arbitrary and capricious arrests, then the danger of overbreadth is present by virtue of the vagueness, *i. e.* protected freedoms can be invaded. We do believe, however, that the First Amendment questions implied in the overbreadth doctrine and the notice requirements of due process inherent in the vagueness doctrine necessitate separate fact-finding inquiries.

For this reason we have framed a second issue:

WHETHER OR NOT THE EVIDENCE ESTABLISHES THAT THE TRIBAL COURT HAS CONSISTENTLY LIMITED THE APPLICATION OF SECTION 19 OF THE CROW CREEK TRIBAL ORDINANCE SO THAT ENFORCEMENT DOES NOT INFRINGE ON PROTECTED FREEDOMS?

Again, we emphasize that the Eighth Circuit has found Section 19 of the ordinance overly broad on its face. *Big Eagle v. Andera, supra,* at 1296. Our task is to find facts as to past construction; legal conclusions will necessarily follow.

## FINDINGS OF FACT

The disorderly conduct ordinance, § 13, provides:

Any Indian who shall engage in fighting in a public place, disturb or annoy any public or religious assembly, or appear in a public or private place in an intoxicated and disorderly condition, or who shall engage in any other act of public indecency or immorality, shall be deemed guilty of· disorderly conduct, and upon conviction thereof, shall be sentenced to labor for a period not to exceed thirty (30) days, or to a fine not to exceed $60.00, or to both such imprisonment and fine with costs. § 19, Crow Creek Sioux Tribe Penal Code.

We must determine how the tribal court has construed this section.

The tribal court is not a court of ·record. Moreover, only one written decision from the tribal court has been brought to our attention. The best indications of past constructions of § 13, therefore, are complaints, incident reports and disposition sheets from cases where a conviction for disorderly conduct was gotten. Counsel have put into evidence several hundred documents relating to disorderly conduct convictions. This Court has examined these exhibits and now makes the following findings.

### I.

Between January 1, 1973, and March 26, 1976, almost all convictions under § 13 resulted from incidents where the persons arrested were intoxicated. (Defendants' Ex. A, Petitioners' Ex. 1–12.) Numerous convictions were based upon incidents where the persons arrested were intoxicated *and* involved in fights. (Defendants' Ex. A.) Numerous convictions were based upon incidents where property was damaged or likely to be damaged due to drunken behavior. (Defendants' Ex. A.) Some convictions were based upon incidents involving indecent exposure, *e. g.* urinating in public while in an intoxicated condition. (Defendants' Ex. A and Petitioners' Ex. 7.) Other convictions for disorderly conduct resulted from neglect or mistreatment of children due to an intoxicated condition. (Defendants' Ex. A.) At least one conviction for disorderly conduct was for disturbing a religious assembly. (Petitioners' Ex. 6.)

A minimum of fifteen (15) convictions were based upon allegations that persons, while intoxicated, were belligerent toward and argumentative with the police. (Petitioners' Ex. 2.) A minimum of twenty-five (25) convictions for disorderly conduct were based upon the use of profanity by an intoxicated person. (Petitioners' Ex. 1.) A minimum of thirty-three (33) convictions resulted from entry into or presence in a home contrary to the desires of the inhabitants, the intruder was in all instances intoxicated. (Defendants' Ex. A, Petitioners' Ex. 10.) At least fifty (50) convictions under § 13 were based upon the fact that someone was highly intoxicated and "passed out." (Petitioners' Ex. 11.) Finally, at least one hundred convictions for disorderly conduct were based upon circumstances wherein an intoxicated person acted in a "disorderly manner," or appeared to be in a "disorderly condition," or "disturbed the peace." (Petitioners' Ex. 9 and 12.)

II.

The documents indicate that many convictions for disorderly conduct have been obtained on the theory that speech of one type or another was an element of the crime. There is not evidence that the speech which was an element of the disorderly conduct charge was speech likely to cause physical violence. (Petitioners' Ex. 1–3.) In many cases insults hurled at the police officers or profanity or being argumentative with officers or unnamed persons was a factor leading to arrest and conviction. (Petitioners' Ex. 1–12, Defendants' Ex. A.) Numerous convictions under § 13 rest upon charges of "mouthing off," "cussing around," "hollering and swearing at officers." (Petitioners' Ex. 2, Defendants' Ex. A.) It appears that certain unpleasant verbal outbursts along with the condition of being intoxicated were sufficient to complete the offense of disorderly conduct.

On or about October 13, 1973, Harvey Big Eagle was arrested when: "[H]e began to use foul and profane language, demanding his rights before he was arrested." On or about October 13, 1973, Vernon Charger was arrested when: "[H]e began to use foul and profane language, demanding his rights before he was arrested." The complaints further state in reference to both charges: "Subject was arrested for this reason." (Petitioners' Ex. 1.) On October 11, 1973, a guilty plea was accepted from both men. (Petitioners' Ex. 1.)

III.

As stated earlier, this remand was necessary because of the conflicting assertions of the tribe and petitioners on appeal. The tribe argued that, at least prior to 1972, prosecution was limited without exception to cases involving both intoxication and fighting. The tribe also argued that there had never been a conviction for annoying a public or religious assembly, and that no one had ever been charged with being in a "disorderly condition." Petitioners argued that the tribe's assertions were "patently false." *Big Eagle v. Andera, supra,* at 1296.

We do not decide now whether defendants' assertions about enforcement prior to 1972 were correct; the exhibits put in evidence date from 1973 to 1976. We do find, however, that since 1973 the application of § 13 has definitely not been limited to cases involving intoxication and fighting. There has been at least one conviction for disturbing a religious assembly and numerous convictions for being in a "disorderly condition" due to intoxication. This Court finds, therefore, that the limiting and clarifying construction sought by the Eighth Circuit has not been made. On the contrary, the tribal court has allowed in practice an expansion of the literal meaning of § 13.

CONCLUSION

On the basis of the findings set out, *supra,* this Court concludes that § 13 of the Crow Creek Tribal ordinance is vague and overly broad according to constitutional standards which must be applied in construing 25 U.S.C. § 1302. This conclusion necessarily follows because: (1) the Eighth Circuit declared the section "facially vague and overbroad" and held that to be constitutional it would be necessary to find a

limiting construction; and (2) the limiting construction has not been made.

Even if the Eighth Circuit had not been so explicit, we would be compelled upon our findings to hold the ordinance void for the following reasons.

## A. Vagueness

The basic value underlying the vagueness doctrine is the idea of fair play between units of government and individuals. Fair play requires that people should not be penalized under criminal statutes which do not give notice in plain language to a person of ordinary intelligence that a course of conduct is forbidden or required. Thus, a criminal law is unconstitutionally vague if:

(1) it fails to inform a defendant what conduct is proscribed, or

(2) it allows policemen, prosecutors, and courts to impose their own personal predilections in determining what should be permissible behavior.

See *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Smith v. Goquen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

These standards were reiterated by the Eighth Circuit as recently as April, 1976. *United States v. Cartano*, 534 F.2d 788 (8th Cir. 1976).

In light of this line of authority, § 13 of the ordinance in question cannot pass a due process test. Our findings demonstrate that § 13 has been used as a catch-all ordinance; a confusing variety of words, acts, and human conditions have been found to be within its prohibitions. The words "disorderly condition" have been sufficient to penalize persons in various degrees of intoxication including those who are "passed out." Counsel have pointed out that the tribe has a public intoxication ordinance; yet, for some reason "disorderly conduct" has been applied to penalize drunkenness. It is beyond the expectations of persons of common intelligence that a disorderly conduct statute would ensnare persons totally incapable of any conscious conduct whatever. Therefore, the ordinance is vague and violates due process.

In the present circumstances, a more pronounced evil is the failure of the law to provide guidance for the police and the court. The reports underlying our findings make evident the fact that being "mouthy" or "uncooperative" with the police is a common form of conduct leading to arrest and conviction for disorderly conduct. Nobody can sensibly blame the police for protecting their dignity and responding to complaints of other reservation residents who are annoyed by profanity or boisterous talk. But, without imputing any bad faith to the police, it is a fact that the unrestricted use of § 13 has vested the police with powers to classify as "disorderly" whatever appears problematic; this is in reality the power to form substantive law. This state of affairs is a government of men rather than a government of laws; such a scheme of government is fundamentally unfair and violates due process.

## B. Overbreadth

The doctrine of overbreadth, related closely to vagueness, arose because of the value placed upon freedoms enumerated in the Bill of Rights. If a statute is so construed that it captures within its reach protected words or actions as well as those words or actions which may properly be made criminal, then the statute offends the federal Constitution. In some instances insults to public officials as well as profanity fall within the area of protected speech. *Lewis v. City of New Orleans*, 415 U.S. 130, 97 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Very recently the Eighth Circuit commented upon the overbreadth doctrine and held an Arkansas statute void on that basis. *Hammond v. Adkisson, et al.*, 536 F.2d 237 (8th Cir. 1976). The Court of Appeal's opinion in the *Hammond* case includes this conclusion:

[E]ven insulting speech is protected by the First Amendment unless it is likely to arouse anger to the extent likely to cause violent physical retaliation. *Hammond* at 239.

█ In the present case the evidence makes it clear that speech has often been an element of the offense of disorderly conduct on the Crow Creek Reservation. Many convictions rest upon nothing more than intoxication and speech, *i. e.* cussing or hollering at the officers. In no instance did the records indicate that the tribal court required a finding that the speech was likely to arouse anger likely to cause physical retaliation. In the absence of such a finding, the ordinance has swept too broadly; and, it appears that the ordinance in question will be so applied in the future.

This overbreadth is particularly evident in the case of Vernon Charger and Harvey Big Eagle who were arrested, according to the reports, for demanding their legal rights prior to arrest. The incident began innocently enough when the police stopped to give the two men a ride. Thinking the police were about to arrest them, they loudly demanded their rights. The police, being disturbed by their behavior, arrested them and each pled guilty to disorderly conduct. This was, no doubt, an unusual application of § 13 but it clearly reveals that the ordinance has been loosely and freely construed. This free-wheeling construction goes too far; it offends First Amendment values incorporated in 25 U.S.C. § 1302.

█ Indian citizens have the rights of freedom of speech and due process of law; since the enactment of 25 U.S.C. § 1302 these rights can be asserted against a tribal government just as any citizen can assert his or her rights against a state or municipal government. Petitioners have demonstrated that the Crow Creek tribal government has enacted an ordinance which, because of vagueness and overbreadth, must be declared void. The relief sought by petitioners will be granted.

The preceding shall constitute the findings of fact and conclusions of law of this Court.