GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

JONATHAN EAGAN, Defendant

Crim. No. 60/1977

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

MONDO QUESTEL, Defendant

Crim. No. 61/1977

GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff

v.

BRUCE YARRINGTON, Defendant

Crim. No. 62/1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

June 9, 1977

LEONARD B. FRANCIS, JR., Deputy Assistant Attorney General, St. Thomas, V.I., *for Government*

JONATHAN EAGAN, St. Thomas, V.I., *pro se*

MONDO QUESTEL, St. Thomas, V.I., *pro se*

BRUCE YARRINGTON, St. Thomas, V.I., *pro se*

FEUERZEIG, *Judge*

## MEMORANDUM OPINION AND ORDER

Three youthful defendants are before this court charged with violating the Virgin Islands disturbing the peace statute, 14 V.I.C. § 622(1).[1] Because the charges stemmed from the same occurrence, the cases were consolidated and on April 4, 1977, were tried before the court without a jury. The defendants appeared pro se. The nature of the conduct attributed to them was such that the court took the matter under advisement and requested the Government to submit a legal memorandum as to whether the conduct of the defendants rose to the level of disturbing the peace, and, if so, whether punishing the conduct of the defendants would be an infringement of their constitutional rights.

The facts are not in dispute. At approximately 1:40 a.m. on Saturday, March 5, 1977, Sgt. Roy Hodge and a fellow officer were driving south on Raadets Gade from Crystal Gade in the vicinity of Fat City and Laurie's Disco Bar when someone tossed a beer bottle at the police car. Sgt. Hodge immediately radioed for assistance, got out of his squad car and told all the people who were standing on the street to go into the bars or move, but, at least, to get off the street. It is not alleged or suggested that any of the defendants were involved with the throwing of the bottle. Defendants Yarrington and Questel, however, were standing in the area. Specifically, Sgt. Hodge said defendants Yarrington and Questel "were shouting obscenities in a loud, boisterous manner and after several warnings to cease with these obscenities, they continued. They were arrested." Sgt. Hodge testified, "They were hollering and

---

[1] 14 V.I.C. § 622. Disturbing the peace; fighting
Whoever maliciously and wilfully
(1) disturbs the peace or quiet of any village, town, neighborhood or person, by loud or unusual noise, or by tumultuous offensive conduct, or threatening, traducing, quarreling, challenging to fight or fighting
. . . .
shall be fined not more than $100 or imprisoned not more than 90 days, or both.

436

saying 'nothing but a bunch of motherfucking pigs' and we 'are no fucking good," etc, etc." The officer's basis for arresting Yarrington and Questel was that they were engaged in "disorderly conduct, shouting loud obscenities across the public street." Sgt. Hodge acknowledged that the obscenities from Yarrington were not aimed directly at him, nor was Mr. Questel speaking directly to him, but he merely was "hollering obscenities and he refused to get off the street and he continued to call us nothing but a bunch of motherfucking pigs, and we are just harassing them and they don't see why they have to get off the street."

Jonathan Eagan also was in the area, but his encounter was with Patrolman Austin Boynes. Officer Boynes had responded to the call for assistance from Sgt. Hodge and had entered Fat City to find anyone who was under age. "On my way out I met the defendant here coming in," he testified. "I asked him how old he was. He didn't answer me. So I put my hand out and he told me, 'you are the second fucking pig for the day to put your fucking hands on me.' So with that he was placed under arrest." Officer Boynes said Mr. Eagan's tone of voice was very loud and that his, the officer's, peace was disturbed by Mr. Eagan's words and that was why he was arrested.

While the court, as stated at the trial, does not condone or in any way place the imprimatur of approval on the conduct of the defendants, the court's job is not to pass moral judgment on the utterances of the defendants but to determine whether, in fact, the Virgin Islands' disturbing the peace statute may constitutionally be applied to the conduct of the defendants.

■ The Government in its memorandum concedes that, standing alone, the mere utterance of the words attributed to the defendants would not violate Title 14 V.I.C. §

622(1).[2] The Government further concedes that People v. Williams, 1 V.I. 30 (1923), in which an individual was convicted of disrespectful conduct towards a policeman in the execution of his duty, no longer is controlling or consistent with today's constitutional principles. The Government does maintain, however, that the utterance of the profanities attributed to the defendants was likely to create an immediate breach of the peace or that the expressions were fighting words as defined by the United States Supreme Court in Chaplinsky v. New Hampshire, 315 U.S. 518, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942) and reaffirmed in Gooding v. Wilson, 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 3 L.Ed.2d 408 (1972).

Lewis v. City of New Orleans, supra, however, laid to rest the question of whether the mere utterance of obscenities to police officers in the performance of their duties is punishable. The Supreme Court held that the City of New Orleans' criminal ordinance as construed by the Louisiana Supreme Court had the effect of punishing only spoken words.[3] As a result, it was susceptible of application to protected speech and thus was constitutionally overbroad and invalid on its face. The Court, however, reiterated that words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace" still would be actionable consistent with Gooding v. Wilson, supra, 415 U.S. at 132, 94 S.Ct. at 972. Clearly, therefore, Lewis v. City of New Orleans does not foreclose prosecu-

[2] It is worth noting that the Government did not charge the defendants with violating 14 V.I.C. § 622(2) which makes it a crime for anyone to use "on the public streets or upon the public highways or within hearing of such streets . . . any vulgar, profane or indecent language in a loud and boisterous manner." Clearly, the Government would have no proper basis to so proceed in view of Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974).

[3] The New Orleans ordinance 828 M. C. S. § 49-7 provided:
It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.

tion of spoken words under circumstances that create a substantial threat of violence. See also Williams v. District of Columbia, 419 F.2d 638 (D.C.Cir. 1969).

However, based upon the evidence and particularly the testimony of Officer Boynes, there is no basis for finding that the conduct of Jonathan Eagan posed a threat to the public peace. Even Officer Boynes's contention that Mr. Eagan's utterances disturbed his peace does not, in this court's opinion, provide a basis for concluding that 14 V.I.C. § 622(1) was violated. For this court to come to a contrary conclusion would require the court to close its eyes to Lewis v. City of New Orleans.

Sgt. Hodge's testimony also does not indicate that there was any threat of violence created by the language of defendants Yarrington and Questel. No doubt the officer had cause for concern after a bottle was thrown at a police car, but there is no indication that either Yarrington or Questel had anything to do with the bottle-throwing incident. Moreover, as the testimony reveals, the only reason they were charged was because they were uttering profanities and did not move on. However, even though Sgt. Hodge ordered Yarrington and Questel to get off the streets and they did not comply, the defendants were not arrested or charged with a violation of 14 V.I.C. § 1508 which prohibits restraining, delaying or obstructing a police officer in the attempt to discharge his duties. In addition, there is no evidence that anyone's peace was disturbed by Yarrington's and Questel's conduct other than Sgt. Hodge's and in light of Lewis v. City of New Orleans, supra, this court cannot hold that merely uttering obscenities to a police officer who is in the process of carrying out his duties is punishable under 14 V.I.C. § 662(1). Moreover, nothing in the record indicates that the utterances of Yarrington or Questel rise to the level of fighting

words that would lead to a conclusion that a breach of peace was, in fact, threatened.

In Williams v. District of Columbia, supra, the District of Columbia Circuit Court of Appeals was called upon in 1975 to interpret the Capital's disorderly conduct statute in light of a charge that the defendant used profane, indecent and obscene words under circumstances that could lead to breach of the peace. The Court of Appeals reversed a guilty verdict and stated that the disorderly conduct statute

would not be invalid if the statutory prohibition against profane or obscene language in public were interpreted to require an additional element that the language be spoken in circumstances which threaten a breach of the peace. And for these purposes the breach of the peace is threatened either because the language creates a substantial risk of provoking violence, or because it is under "contemporary community standards," so grossly offensive to members of the public who actually overhear it as to amount to a nuisance.

419 F.2d at 646 (footnotes omitted).

■ The testimony of Sgt. Hodge and Officer Boynes does not indicate that the language complained of created a substantial risk of provoking violence. However, was the language under contemporary community standards so grossly offensive to members of the public who actually overheard it as to amount to a nuisance? The D.C. Circuit Court of Appeals in attempting to define "members of the public" relied on the Model Penal Code, § 250.1 (Proposed Official Draft, 1962), which stated:

The word "public" was used to exclude from the offense situations where it is only "the policeman's peace and quiet that are allegedly disturbed."

419 F.2d at pp. 646–47, n. 25.

This court adopts that definition of the public to the case sub judice, and since there is no evidence that anyone other than Officer Boynes or Sgt. Hodge was disturbed by the language of the defendants, a finding of not guilty should

be entered. The court need not determine whether the alleged utterances amount to a public nuisance.[4]

The recent decision of Hammond v. Adkisson, 536 F.2d 237 (8th Cir. 1976) reinforces this court's conclusions. In Hammond v. Adkisson the Eighth Circuit Court of Appeals sitting en banc construed an Arkansas statute prohibiting the "use of any profane, violent, vulgar, abusive or insulting language . . . calculated to arouse to anger the person . . . addressed, or to cause a breach of the peace or an assault." In Hammond the defendant came out of her house after a police officer had arrested a friend and stated:

you m.f. son-of-a-bitches think you all can come out and do any thing that you want to do.

536 F.2d at 238.

At that point the officer placed the defendant under arrest. She then resisted arrest and was charged with violating the previously quoted statute and resisting arrest. The Eighth Circuit declined to hold that the words were not fighting words as a matter of law, but granted the defendant's petition for a writ of habeas corpus because the trial court had made no finding that under the circumstances the defendant's words were likely to incite violent retaliation from the person to whom the words were addressed. Relying on Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed. 2d 471 (1965) the Eighth Circuit stated:

Thus, even insulting speech is protected by the First Amendment unless it is likely to arouse anger to the extent likely to cause violent physical retaliation.

536 F.2d at 239.

■ The court found that although the words used may be profane and abusive that was not sufficient to convict

---

[4] This court must say, though, that it would have great difficulty concluding that by contemporary community standards the language in question can be said to be so grossly offensive as to constitute a public nuisance.

under the statute. The court thus concluded that in order to have a valid application of a breach of the peace statute to speech there must be a determination that the words were used "under such circumstances" that they were likely to arouse to immediate and violent anger the person to whom the words were addressed. 536 F.2d at 239. The court cited the concurring opinion of Justice Powell in Lewis v. City of New Orleans, supra, to indicate that such circumstances were lacking. This court believes the words of Justice Powell are especially applicable here.

[W]ords may or may not be "fighting words," depending upon the circumstances of their utterance. It is unlikely . . . that the words said to have been used here would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered . . . [A] *properly trained officer may reasonably be expected to "exercise a higher degree of restraint" than the average citizen, and thus be less likely to* respond belligerently to "fighting words."

415 U.S. at 135, 94 S.Ct. at 973, 39 L.Ed.2d at 220 (Emphasis added).

██ In the instant case the court holds that the utterances of the defendants were not fighting words under the circumstances and they did not constitute or threaten a breach of the peace. Further, the court believes that the Government's reliance on Government of the Virgin Islands v. Cecil France, Crim. No. 75/1962 (District Court of the Virgin Islands, Division of St. Thomas and St. John decided October 2, 1975) is misplaced in that France is factually distinguishable.[5] As Chief Judge Christian stated in interpreting "loud or unusual noises" or "tumultuous offensive conduct" under 14 V.I.C. § 622(1), "What may not be loud and tumultuous in one setting might be

---

[5] France involved an individual disrupting a teacher and her kindergarten class of five-year-olds then in session.

unquestionably so in another," or vice versa as in this case.

Accordingly, an order will be entered on behalf of each of the defendants in the above-captioned action finding them not guilty as charged.

### ORDER

The premises considered therefore:

IT IS ORDERED, ADJUDGED AND DECREED that the defendants Jonathan Eagan, Mondo Questel and Bruce Yarrington be and are found not guilty of the charge of disturbing the peace, 14 V.I.C. § 622(1).